**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

SHANIKA LASHAY ROBINSON,

    Plaintiff,

v.                                                      Case No. 11-11267

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
                                           /

**OPINION AND ORDER REJECTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Shanika Robinson, seeks to overturn a denial of disability benefits by Defendant, the Commissioner of the Social Security Administration. Both parties move for summary judgment. The magistrate judge issued a report and recommendation ("report") that recommends remanding to the Commissioner for further proceedings. The Commissioner objected to the report and Plaintiff, despite having been prompted by court staff over the telephone, has not responded to the Commissioner's objection.

Plaintiff argues that the Commissioner failed to observe the "treating source" rule and failed to present a vocational expert an accurate hypothetical. Because these arguments are unsound, because substantial evidence supports the Commissioner's decision, and because the magistrate judge resolves conflicts of evidence and introduces arguments that are both waived and unpersuasive, the Commissioner's

objection is sustained, the report is rejected, Plaintiff's motion is denied, the Commissioner's motion is granted, and the Commissioner's decision is affirmed.

## I.  BACKGROUND

Plaintiff is twenty-eight years old.  No one doubts that she faces challenges.  She has learning disabilities and she struggles to concentrate.  Tests place her intelligence in the bottom fifth percentile.  She says she often suffers anxiety.  And she endures scoliosis, gastrointestinal problems, and probable dwarfism.

The magistrate judge summarizes Plaintiff's mother's depiction of Plaintiff's daily life:

> [Plaintiff] . . . lives "with family," and [] her daily routine includes bathing, brushing her teeth, combing her hair, washing her face, dressing, and making her bed.  She can assist her family with light household chores, such as dusting low areas, making beds and folding clothes, sometimes runs errands with her mother, and eats dinner with her family.  However, [Plaintiff] needs to be reminded to do her chores on a regular basis . . . .  For the most part, [Plaintiff] can dress and feed herself, although because she has very short arms, she needs assistance from her mother with bathing and caring for her hair.  She needs reminders to take care of personal needs (such as taking her medication, bathing, and maintaining feminine hygiene), attend doctors' appointments, and complete household chores.  [Plaintiff] can prepare some "limited" meals, like sandwiches, but cannot use the stove; essentially, her mother cooks meals, while [Plaintiff] helps out if something needs to be microwaved.  [Plaintiff] is not able to do outdoor chores like shoveling snow or pushing a lawnmower.  [Plaintiff] goes outside weekly with her parents for light exercise, but she cannot leave the neighborhood alone.  She cannot drive a vehicle because, at her height (4'8"), she cannot reach the pedals, and because she finds it too "stressful."  She cannot pay bills, handle a savings account, or use a checkbook; her parents do these things for her.  [Plaintiff] spends time with her family and extended family, goes to church, attends doctors' appointments, and goes to the mall on a regular basis, but cannot do so alone.

(R&R 4, Dkt #10 at 4 (citations omitted); *see* Tr. 114-21.)  Plaintiff has worked only once, briefly, bagging groceries.  She found lifting heavy bags difficult and stressful.

2

In 2008 Plaintiff applied for Supplemental Security Income ("SSI") disability benefits. Her claim was denied, so she sought a hearing before an administrative law judge ("ALJ"). At the December, 2009, hearing both the ALJ and Plaintiff's counsel questioned Plaintiff and a vocational expert. The ALJ considered also, among other evidence, the opinions of Sayyad Sohrab, a neurologist; Paul Ratcliff, an osteopath; Michael Matouk, a psychologist; Blaine Pinaire, a psychologist; and Jeanette Campbell, a pediatrician and Plaintiff's treating physician.

The ALJ denied benefits. Discussing Plaintiff's mental capacity (the main issue of this action), the ALJ writes:

> At the claimant's consultative psychiatric examination, she was observed to be neat, clean, and well-groomed. Mr. Matouk [the examiner] noted that the claimant "tracks the examination adequately" and "presents as cooperative." The claimant, furthermore, was able to "elaborate her answers well" and make adequate eye contact throughout the examination. The claimant could remember three [out of] three objects immediately and two out of three objects after a lapse of three minutes. The claimant, moreover, could remember four digits forward and three digits backward with consistency. The claimant's ability to determine similarities was adequate, and her judgment was described as "marginal to adequate." In her cognitive functioning testing, the claimant was able to manipulate multi-digit addition and subtraction equations. The claimant, furthermore, could reproduce geometric figures, while preserving the *Gestalt* of these figures, during testing of her perceptual motor functioning. With regard to her social functioning, the claimant stated in this examination . . . that she is able to socialize with her immediate and extended family. During a December 2008 physical examination by Dr. Sohrab, the claimant was observed to have intact long-term memory. In addition, Dr. Sohrab observed that the claimant [] could follow commands with no apparent difficulty in understanding.
>
> . . . . In a report of her daily activities, the claimant stated that she enjoys reading magazines, watching television, and listening to music; the claimant's ability to engage in these hobbies reflects that she retains a measure of audiovisual comprehension skills. Notes from an October 2007 examination reveal that the claimant received an office skills certificate from Baker College. These notes indicate that this certificate attests to the claimant's ability to perform simple computer skills and operate small office machines.

> At her hearing, the claimant testified that she is able to type. She further testified that she is able to answer and forward calls.

(ALJ's Op. 8, Tr. 38 (citations omitted).) Finding Plaintiff able to perform simple and sedentary tasks, the ALJ concludes, based on the vocational expert's testimony, that Plaintiff can work by packaging, sorting, assembling, or ticket selling. The Social Security Appeals Council denied review, and in March, 2011, Plaintiff began this action.

In a May 24 2012 report the magistrate judge recommends remanding Plaintiff's case for further consideration. The magistrate judge suggests that the ALJ erred by according insufficient weight to the opinion of Plaintiff's treating physician, by asking the vocational expert an inaccurate hypothetical question, and by failing to consider whether Plaintiff suffers mental impairments "equivalent" to an IQ of 70 or lower.

## II.  STANDARDS

### A.  Review of a Report and Recommendation

A magistrate judge considering a dispositive motion remains "under the district court's total control and jurisdiction." *United States v. Raddatz*, 447 U.S. 667, 681 (1980). A district judge may "accept, reject, or modify, in whole or in part," the magistrate judge's "findings or recommendations." 28 U.S.C. § 636(b)(1). Under 28 U.S.C. § 636(b)(1), however, the district judge need "make a de novo determination" of only "those portions of [a] report . . . to which objection is made." "The purpose of such objections is to provide the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately." *Kelly v. Withrow*, 25 F.3d 363, 365 (6th Cir. 1994) (quoting *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981)).

### B. Review of the Commissioner's Decision

When the Appeals Council declines to review a denial of benefits, "the decision of the ALJ becomes the final decision of the [Commissioner]." *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). A federal court may overturn a denial of benefits only if the Commissioner's decision either applies an erroneous legal standard or lacks substantial supporting evidence. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept" as sufficient to support a conclusion. *Ealy v. Comm. of Social Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). A denial of benefits supported by substantial evidence cannot suffer reversal merely because substantial evidence also supports an award of benefits. *Lindsley v. Comm. of Social Sec.*, 560 F.3d 601, 604-05 (6th Cir. 2009). The reviewing court may neither weigh the evidence nor resolve a question of credibility. *Jordan v. Comm. of Social Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990).

### III. DISCUSSION

To receive SSI benefits a claimant must establish that she suffers a disability, which the Social Security Act defines, in pertinent part, as:

> [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); *see Rabbers v. Comm. Social Sec. Admin.*, 582 F.3d 647, 652 (6th Cir. 2009).

> A five-step analysis is utilized for evaluating disability claims. 20 C.F.R. § 404.1520. The claimant must first show that she is not engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Next, the claimant must

5

demonstrate that she has a "severe impairment." 20 C.F.R. § 404.1520(c). A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment." 20 C.F.R. § 404.1520(d). If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. 20 C.F.R. § 404.1520(e). Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. 20 C.F.R. § 404.1520(f).

*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). "Residual functional capacity" in step five means "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

The ALJ concludes that Plaintiff satisfies steps one, two, and four. Plaintiff's motion for summary judgment addresses only step five. The magistrate judge's report and recommendation addresses steps three and five.

### A. Plaintiff's Motion for Summary Judgment

Plaintiff contends that the ALJ erred twice: by failing to observe the "treating source" rule and by failing to present an accurate hypothetical to the vocational expert.

### 1. The Treating Source Rule[1]

---

[1] Plaintiff titles the first substantive section of her motion "Whether the decision of the Administrative Law Judge is supported by substantial evidence?" But most of the section argues merely that the ALJ failed to comply with the "treating source" rule when he assessed Plaintiff's residual functional capacity. The only digression occurs when Plaintiff asserts that the ALJ errs by calling Dr. Pinaire a psychiatrist instead of a psychologist. (Pl.'s Mot. Summ. J. 3, Dkt. #7 at 5.) Plaintiff never explains how mislabeling Dr. Pinaire constitutes reversible error. Neither "the statutes [n]or [the] regulations suggest that a psychologist's evaluation is to be given less weight than a psychiatrist['s]." *Crum*, 921 F.2d at 645.

Although Dr. Pinaire finds Plaintiff "capable of unskilled tasks," Dr. Campbell believes Plaintiff cannot maintain a full-time job. At step five, while assessing Plaintiff's residual functional capacity, the ALJ "found particularly persuasive" the opinion of Dr. Pinaire, who reviewed Plaintiff's record. (ALJ's Op. 6, Tr. 36.) The ALJ "afforded . . . no weight" to the opinion of Dr. Campbell, who has treated Plaintiff since birth. (*Id.* at 9, Tr. 39.) Plaintiff argues that the ALJ thereby erred.

Under the treating source rule, if a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence," it receives controlling weight. *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009). An ALJ must provide "good reasons" for rejecting a treating physician's opinion. *Bowen v. Comm. of Social Sec.*, 478 F.3d 742, 747 (6th Cir. 2007).

In a state "medical examination report," Dr. Campbell, in a section titled "Mental Limitations (check appropriate box)," checked the boxes labeled "comprehension," "following simple directions," and "social interaction." (Tr. 176.) She wrote that Plaintiff "need[s] special coaching" and that Plaintiff was "unable" to complete her "entire program" at Baker College. (*Id.*) In a document titled "Answers to SSI request," Dr. Campbell states that Plaintiff suffers "developmental and mental delay" and that Plaintiff "needs assistance and supervision to maintain her daily living." (Tr. 254.) In closing Dr. Campbell declares, "I do not feel [Plaintiff] can maintain a full-time job. She still is performing below average." (*Id.*)

That Plaintiff failed to complete the "entire program" in college is possibly true, although one of Dr. Campbell's notes suggests Plaintiff in fact finished. (Tr. 252.)

Regardless, Plaintiff says she remained in the college office skills program for at least three years. (Tr. 10-11, 214.) The persistence for three years and the apparent failure to finish send conflicting signals about Plaintiff's ability. For the purpose of determining SSI disability, "need[s] special coaching," "needs assistance and supervision to maintain [] daily living" and "perform[s] below average" are vague and for the most part unhelpful remarks. And Dr. Campbell's other statements are unsupported conclusions.

> Hence the ALJ's main reason for rejecting Dr. Campbell's opinion:
>
> Although the claimant's evidence demonstrates that she suffers from significant cognitive deficiencies, Dr. Campbell does not cite specific clinical observations or findings that support her opinion that the claimant is precluded from performing any sort of work-related activity on a sustained basis.

(ALJ's Op. 9, Tr. 39.) An ALJ may reject a treating physician's opinion that lacks supporting clinical evidence. *See, e.g.*, *Combs v. Comm. of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006); *Murphy v. Sec. of Health & Human Servs.*, 801 F.2d 182, 185 (6th Cir. 1986); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984). The ALJ in this case did no more than that.[2]

---

[2] The magistrate judge writes that "[because] Dr. Campbell's opinion is supported by objective clinical findings and by other record evidence, it was error for the ALJ to give it no weight." (R&R, Dkt. #10 at 22.) For her opinion to enjoy special weight, however, a treating physician must provide the clinical findings herself. *See Combs*, 459 F.3d at 652; *Murphy*, 801 F.2d at 185 ("the treating physician [must] suppl[y] sufficient medical data to substantiate [her] diagnosis"). Otherwise a judge could use the mere existence of an unpersuasive treating physician as an excuse to weigh the record's conflicting evidence. Under the cover of an artificial and unwarranted "deference" to the treating physician, a judge could dismiss the evidence supporting the ALJ's decision merely because other evidence supports the treating physician's opinion. *Cf. Lindsley*, 560 F.3d at 604 ("administrative findings are not subject to reversal merely because substantial evidence . . . support[s] a different conclusion").

The treating source rule arises from the notion that greater experience with the claimant bestows on a treating physician unique insights about the claimant's condition.[3] But other factors, such as expertise, matter too. A Social Security Ruling states:

> The opinion of a State agency . . . psychological consultant . . . may be entitled to greater weight than a treating source's medical opinion if the State agency . . . psychological consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source.

SSR 96–6p, 1996 WL 374180, *2 (1996). The example in the ruling resembles the ALJ's decision. The ALJ discounts the opinion of a pediatrician with direct but non-specialist experience treating Plaintiff and favors the opinion of a psychological specialist who reviewed Plaintiff's records. The ALJ supports this decision with clinical data from the record. In the detailed explanation quoted above, Sec. I, *supra* (quoting ALJ's Op. 8, Tr. 38), the ALJ notes that, among other skills, Plaintiff grasps basic math, retains a functional memory, and maintains a neat appearance.

Although the ALJ thus provides a compelling reason for rejecting the treating source's opinion, Plaintiff raises a problem. Explaining 20 C.F.R. § 404.1527(c) (at the time codified as 20 C.F.R. § 404.1527(d), *see* 77 FR 10651-01, 10656 (2012)), *Wilson v. Commissioner of Social Security*, 378 F.3d 541 (6th Cir. 2004), states:

---

[3] A treating source is "likely . . . [the] most able to provide a detailed, longitudinal picture" of a claimant's medical impairments. 20 C.F.R. § 404.1527(c)(2). On the other hand, "there are grounds for skepticism; physicians [might] naturally tend to support their patients' disability claims. . . . [A] patient's regular physician may want to do a favor for a friend and client." *Hawkins v. First Un. Corp. Long-Term Disability Plan*, 326 F.3d 914, 917 (7th Cir. 2003).

> If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.* at 544. *Wilson* emphasizes that the procedural protections in Section 404.1527(c) are not trivial:

> A court cannot excuse the denial of a mandatory procedural protection simply because . . . there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely. A procedural error is not made harmless simply because the aggrieved party appears to have had little chance of success on the merits anyway.

*Wilson*, 378 F.3d at 546; *see also Hensley v. Astrue*, 573 F.3d 263 (6th Cir. 2009). Given that the ALJ fails to discuss Section 404.1527(c), Plaintiff raises a potentially compelling reason to remand the action for additional findings.

> But after asserting Section 404.1527(c)'s importance *Wilson* equivocates:
>
> We do not decide the question of whether a *de minimis* violation [of Section 1527(c)] may qualify as harmless error. For instance, if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it, a failure to observe [Section 1527(c)] may not warrant reversal. *Cf. NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n.6 (1969) (plurality opinion) (where "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game"). . . . Or perhaps a situation could arise where the Commissioner has met the goal of [Section 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation.

*Wilson*, 378 F.3d at 547.

The ALJ acknowledges Plaintiff and Dr. Campbell's treatment relationship. (ALJ's Op. 8, Tr. 38 ("Campbell [is] a pediatrician who has treated the claimant since the claimant's birth").) But he explains why he finds Dr. Campbell's opinion both

10

unsupported and inconsistent with substantial evidence in the record. (*See* ALJ's Op. 8-9, Tr. 38-39. (*e.g.*, "Dr. Campbell fails to support her conclusions with objective medical evidence"; "Dr. Sohrab observed that the claimant [] could follow commands with no apparent difficulty in understanding"; "[the claimant] further testified that she is able to answer and forward phone calls").) He obviously finds the opinion's lack of support and the contrary evidence in the record dispositive. In addition, although he never uses the fact to support his conclusion, the ALJ notes that Dr. Pinaire is a cognitive specialist, whereas Dr. Campbell, so far as the record shows, is not. In short, the ALJ successfully addresses Dr. Campbell's opinion and provides "the procedural safeguard of reasons." *Cf. Tilley v. Comm. of Soc. Sec.*, 394 Fed.Appx. 216, 222 (6th Cir. 2010) (finding a failure to discuss the Section 404.1527(c) factors harmless error); *Coldiron v. Comm. of Soc. Sec.*, 391 Fed.Appx. 435, 440 (6th Cir. 2010) (same); *Nelson v. Comm. of Soc. Sec.*, 195 Fed.Appx. 462, 470 (6th Cir. 2006) (same); *Guinn v. Comm. of Soc. Sec.*, 555 F.Supp.2d 913, 920 (S.D. Ohio 2008) (same).[4]

---

[4] The magistrate judge suggests that, after considering the Section 404.1527(c) factors, the ALJ must find that Dr. Campbell's opinion is due "at least some" weight, rather than none. (R&R, Dkt. #10 at 22.) It is not clear, though, what "at least some" weight represents. As Judge Easterbrook says in another context:

> Although [an ERISA] plan administrator's self-interest does not affect the standard of review, [a governing precedent] calls it a "factor" to "weigh" in evaluating the decision. How *much* does it weigh? . . . [I]t can't weigh very much without exceeding the judicial capacity to tailor standards of review. Judges understand deferential and non-deferential review, but intermediate variations blur into one another without promoting understanding or consistent adjudication.

*Perlman v. Swiss Bank Corp. Comp. Disability Protection Plan*, 195 F.3d 975, 981 (7th Cir. 1999) (citation omitted) (emphasis in original). Even if according Dr. Campbell's opinion literally "no" weight seems unreasonable, to remand the case and order the ALJ

The ALJ sufficiently complied with the treating source rule.

### 2. Vocational Expert Hypothetical

At step five, when determining what jobs a claimant can perform, an ALJ may rely on a vocational expert's response to a hypothetical question, "but only if the question accurately portrays [the] plaintiff's individual physical and mental impairments." *Varley v. Sec. of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

The ALJ asked the vocational expert whether jobs exist for a person "with a high school education, maybe some college[—]that's debatable," who is "limited to simple, unskilled , . . light," and sedentary work, involving no lifting of more than ten pounds and no reaching above six feet, and involving no multitasking. (Tr. 21-23.) The vocational expert listed several available jobs for a person of that description, but Plaintiff objects that the description fails to include one of Plaintiff's impairments. Specifically, Plaintiff asserts that the ALJ "failed to include [Plaintiff's] difficulty with deployment[,] concentration, and attention as described by the clinical psychologist." (Pl.'s Mot. Summ. J. 5, Dkt. # 7 at 7.) By "the clinical psychologist," Plaintiff apparently means Matouk, who wrote that Plaintiff "evidences moderate difficulty with attentional deployment and concentration . . . ." (Tr. 193.)

Although it needs to include each of the claimant's limitations, a hypothetical presented to the vocational expert need not list each of the claimant's specific medical conditions. *Webb v. Comm. of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). In this

---

to accord her opinion "some" weight serves no useful purpose. The ALJ enjoys the discretion to conclude that "some" in this instance means "inconsequentially little." His writing shows that this is what he would conclude, and not without reason.

instance, the ALJ encapsulated Plaintiff's inability to concentrate by asking only for jobs that involve simple and unskilled work devoid of multitasking. *See Winschel v. Comm. of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) ("when medical evidence demonstrates that a claimant can engage in . . . unskilled work despite limitations in concentration, . . . limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations") (citing the Seventh, Eighth, and Ninth Circuits).

Plaintiff fails to show that the ALJ posed an inaccurate hypothetical.

### B. The Magistrate Judge's Report and Recommendation

The magistrate judge accepts Plaintiff's treating source argument. But in reaching his conclusion he re-weighs the evidence. (*See* n.2, *supra*; R&R., Dkt. #10 at 18-22 (*e.g.*, reviewing the evidence and concluding that "[the ALJ] improperly gave . . . too much weight to Dr. Pinaire's opinion").) For that reason, and for the reasons stated above, Plaintiff's argument must be rejected. The magistrate judge neither accepted nor explicitly rejected Plaintiff's other argument, the objection to the ALJ's hypothetical. (*See* R&R., Dkt. #10 at 26 n.14 (noting merely that the ALJ's hypothetical "may have been designed" to incorporate Plaintiff's poor concentration).) For these and the reasons stated above, however, the argument is rejected. Plaintiff's attempt to overturn the ALJ fails.

The magistrate judge also addressed additional, novel arguments. Although a judge might raise an argument *sua sponte* to remedy a clear error or a plain miscarriage of justice, arguments that do not involve statutory law or binding case law are waived if Plaintiff did not raise them in her motion for summary judgment. *See Young v. Sec. of Health & Human Servs.*, 925 F.2d 146, 149 (6th Cir. 1990); *see also United States v.*

*Layne*, 192 F.3d 556, 566 (6th Cir. 1999); *Ridenour v. Boehringer Ingelheim Pharm., Inc.*, 679 F.3d 1062, 1067 (8th Cir. 2012).[5]

In any event, these additional arguments fail to persuade.

### 1. The Program Operations Manual System and Listing 12.05(c)

A claimant can qualify for benefits at step three by showing that her impairment is "equal in severity" to a listed impairment. 20 C.F.R. § 416.926(a).

The magistrate judge first suggests that the ALJ erred by failing to consider whether Plaintiff's impairment equals Listing 12.05(c), the listing for mental retardation. To establish disability under Listing 12.05(c), a claimant must (1) suffer "significantly sub[-]average general intellectual functioning with deficits in adaptive functioning" that begins "before age 22"; (2) score 60 to 70 on a "valid verbal, performance, or full scale" IQ test; and (3) suffer "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). Plaintiff does not meet the second requirement because her verbal IQ is 73, her performance IQ is 73, and her full scale IQ is 71. (Tr. 189.) But the magistrate judge quotes the Commissioner's Program Operations Manual System ("POMS"), which states:

> The criteria for [Listing 12.05(c)] are such that a medical equivalence determination would very rarely be required. However, slightly higher IQ's (e.g., 70-75) in the presence of other physical or mental disorders that impose additional and significant work-related limitation of function may

---

[5] Plaintiff likely waived the arguments also by failing to respond to the Commissioner's objections—especially because the Commissioner objected in part based on waiver. *Cf. Foster v. Barilow*, 6 F.3d 405, 407 (6th Cir. 1993) (declining to consider the plaintiffs' argument against an award of attorney's fees because the plaintiffs never responded to the defendant's attorney's fees motion).

> support an equivalence determination. It should be noted that generally the higher the IQ, the less likely medical evidence in combination with another physical or mental impairment(s) can be found.

POMS § DI24515.056. The ALJ's "failure to consider the POMS guidelines," the magistrate judge believes, "constitutes error warranting remand." (R&R, Dkt. #10 at 18.)

The POMS guidelines are not legally binding, *Davis v. Sec. of Health & Human Servs.*, 867 F.2d 336, 340 (6th Cir. 1989), and they "do not bind the Commissioner," *Tejada v. Apfel*, 167 F.3d 770, 775 (2d Cir. 1999); *accord* Social Security Administration, *SSA Program Operations Manual System Home*, https://secure.ssa.gov/ apps10/poms.nsf/ aboutpoms (visited Sept. 23, 2012) ("The POMS states only internal [Social Security Administration] guidance. It . . . may not be relied upon to create any rights enforceable at law by any party in a civil or criminal action."). Why, then, should an ALJ's failing to discuss the POMS guidelines constitute an error of law? The magistrate judge cites *Shontos v. Barnhart*, 328 F.3d 418, 424 (8th Cir. 2003), which states, ambiguously, "this court has instructed that an ALJ should consider the POMS guidelines." Indeed, perhaps an ALJ should consult them. But reversing the Commissioner based solely on the guidelines trespasses the "'zone of choice' within which the Commissioner can act" without court interference. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). (It also discourages the Commissioner from providing the ALJs detailed non-binding guidance.)

Further, the ALJ need not discuss each possible equivalent; rather, he needs to show that substantial evidence supports his findings. *See* 42 U.S.C. § 405(g); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200-01 (9th Cir. 1990). The ALJ concludes—in

15

accord with Dr. Pinaire's diagnosis—that Plaintiff suffers borderline intellectual functioning. (*See* Tr. 206.) The record contains no diagnosis of mental retardation, and the ALJ lists mental capacities that controvert a finding of equivalence. Sec. I, *supra* (quoting ALJ's Op. 8, Tr. 38). The ALJ raises substantial evidence supporting his conclusion that Plaintiff does not meet or equal Listing 12.05(c). *See Howard v. Massanari*, 255 F.3d 577, 582-83 (8th Cir. 2001) (stating, in a case involving a claimant with an IQ of 71, that "where a claimant's IQ score does not fall within the range given in 12.05C, but is slightly above that range, the ALJ's determination that the claimant is not mentally retarded is supported by substantial evidence"); *see also Cooper v. Comm. of Soc. Sec.*, 217 Fed.Appx. 450, 452 (6th Cir. 2007); *Burns v. Barnhart*, 312 F.3d 113, 125-26 (3d Cir. 2002); *Cockerham v. Sullivan*, 895 F.2d 492, 496 (8th Cir. 1990).

### 2. Additional Omissions from the Vocational Expert Hypothetical

In his hypothetical to the vocational expert the ALJ never mentioned Plaintiff's borderline intellectual functioning. The magistrate judge suggests that "numerous [] courts have specifically held that [borderline intellectual functioning] should be included in the hypothetical questions posed to the vocational expert." (R&R, Dkt. #10 at 24.) For support the magistrate judge cites *Hunt v. Massanari*, 250 F.3d 622 (8th Cir. 2001), as well as *Grissom v. Barnhart*, 416 F.3d 834 (8th Cir. 2005), which in turn stands on *Lucy v. Chater*, 113 F.3d 905, 908 (8th Cir. 1997), and *Pickney v. Chater*, 96 F.3d 294 (8th Cir. 1996).

*Hulsey v. Astrue*, 622 F.3d 917 (8th Cir. 2010), distinguishes *Lucy* and *Pickney* by observing that "the ALJ in Hulsey's . . . administrative hearing posed a hypothetical that limited Hulsey to 'work of an unskilled nature involving only superficial interpersonal

16

contact.'" 622 F.3d at 922. "Unlike in *Lucy* or *Pickney*," *Hulsey* reasons, "the ALJ in this case posed a hypothetical that accounted for some degree of mental impairment." *Id.* *Hulsey* concludes that "the ALJ's hypothetical . . . adequately described the consequences of Hulsey's [borderline intellectual functioning]." *Id.* at 925. In *Hunt v. Massanari*, 250 F.3d 622 (8th Cir. 2001), the ALJ's hypothetical included no limitations that suggested a mental impairment. 250 F.3d at 625. Similarly, the ALJ in *Grissom* said that his hypothetical person could not perform only "highly-complex job tasks." 416 F.3d at 836. *Hunt* and *Grissom* resemble *Lucy* and *Pickney*, in which the hypothetical entirely omitted mental impairment; and all four cases differ from *Hulsey* and Plaintiff's case, in which the hypothetical, by seeking only unskilled work, suggested mental impairment.

The magistrate judge cites also *Burns v. Barnhart*, 312 F.3d 113, 122-23 (3d Cir. 2002). *Burns* reverses an ALJ because he said the hypothetical person could perform only "simple, repetitive one [or] two-step tasks," which failed to convey all of the claimant's mental limitations. When raising *Burns* the magistrate judge cites no specific limitation that the ALJ omitted from his hypothetical. He suggests, rather, that the ALJ improperly omitted a medical diagnosis, borderline intellectual functioning. Again, a hypothetical needs to include a limitation but need not include a medical condition. *Webb*, 368 F.3d at 633. So *Burns* is not pertinent. The ALJ sufficiently described Plaintiff's mental impairments by limiting his hypothetical person to "simple" and "unskilled" work involving no multitasking. *Cf. Hulsey*, 622 F.3d at 922-25; *Howard*, 255 F.3d at 581-82.

Finally, the magistrate judge faults the ALJ for saying that the hypothetical person had "a high school education, maybe some college[—]that's debatable." (Tr. 22.) By saying this, the magistrate judge claims, "the ALJ substantially overstated [Plaintiff's] intellectual capabilities." (R&R, Dkt. #10 at 25.) For better or worse, however, what the ALJ said is true. Taking a combination of regular and remedial classes, Plaintiff graduated from high school with a 3.3 GPA. (Tr. 14.) And she spent three years in a college program. The ALJ balanced the accurate information about Plaintiff's education by stating that the hypothetical person needed simple, unskilled, single-task work.

The hypothetical was sufficient.

## IV.  CONCLUSION

The Commissioner's objection [Dkt. # 11] is SUSTAINED, and the report and recommendation [Dkt. # 10] is REJECTED. Accordingly,

IT IS ORDERED that Plaintiff's motion for summary judgment [Dkt. # 7] is DENIED, the Commissioner's motion for summary judgment [Dkt. # 8] is GRANTED, and the Commissioner's decision is AFFIRMED.

      s/Robert H. Cleland  
      ROBERT H. CLELAND  
      UNITED STATES DISTRICT JUDGE

Dated:  September 26, 2012

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 26, 2012, by electronic and/or ordinary mail.

      s/Lisa Wagner  
      Case Manager and Deputy Clerk  
      (313) 234-5522

S:\Cleland\JUDGE'S DESK\C2 ORDERS\11-11267.ROBINSON.RejectR&RSocialSecurity.ckb.wpd